UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:17-CR-164 |
| | ) | |
| | ) | |
| STACY NEWLIN. | ) | |

**OPINION AND ORDER**

Stacy Newlin was sentenced 19 months ago for two child pornography related offenses, and he now seeks compassionate release from prison. Newlin asks that I reduce his prison sentence so that he may commence his term of supervised release and be placed on home confinement for the balance of his remaining prison sentence. He says that because of his health problems he is at a heightened risk of suffering complications if he were to contract COVID-19. After due consideration of the briefing and medical records, and for the reasons discussed below, I will deny Newlin's Motion for Compassionate Release. [DE 66.]

**Background**

On January 7, 2019, Defendant Stacy Newlin pleaded guilty to two child pornography related offenses. [DE 41.] On April 25, 2019, I sentenced him to a term of 78 months of imprisonment, which was well below what the U.S. Sentencing Guidelines suggested. I further ordered that his term of imprisonment be followed by a 10-year term of supervised release. [DE 53.] On May 21, 2020, Newlin requested counsel to represent him in connection with a motion for compassionate release. [DE 59.] I granted

that request [DE 60] and a motion for compassionate release was filed. The basis for the motion is that Newlin suffers from numerous serious medical problems which put him at heightened risk of having serious complications in the event he contracts COVID-19. The government has responded to the motion and both sides agree that an evidentiary hearing is unnecessary. [DE 81.] So the motion is ready to be ruled on.

Newlin is serving his sentence at Elkton Federal Correctional Institution located in Lisbon, Ohio. That facility has been one of the hardest facilities in the country in terms of number of inmates who have contracted the COVID-19 virus and for the number of inmates who have died in BOP custody from the virus. *See* BOP, COVID-19 Cases https://www.bop.gov/coronavirus/index.jsp (accessed Aug. 24, 2020). As I have noted before, the rapid spread at FCI Elkton appears to be due to its nature as a low security facility in which inmates are housed in open "dormitory-style" units. *See, e.g.*, *United States v. Jackson*, No. 2:18-CR-86-PPS, 2020 WL 3396901, at *3 (N.D. Ind. June 19, 2020) (collecting cases and discussing conditions and the spread of COVID-19 at FCI Elkton in late May and early June 2020). Newlin says this makes it more likely that he'll contract the virus and that he is at a heightened risk of dying or having a more serious case of the virus because of his health conditions. Specifically, Newlin says he recently underwent surgery on his lung, has a form of emphysema, and has cardiovascular issues. As discussed below, the Government disputes much of how Newlin characterizes his health. Newlin further says that social distancing at FCI Elkton is not possible due to the dormitory style of the facility and unit in which Newlin resides. The

implication is that it is thus only a matter of time until he contracts the virus. But as of now, Newlin has not actually contracted the virus or exhibited symptoms associated with COVID-19, and his medical records reflect that he has tested negative as of May 4, 2020. [DE 78 at 134.]

## Discussion

Compassionate release is "an extraordinary and rare event." *United States v. Mangarella*, 2020 WL 1291835, at *2-3 (W.D.N.C. Mar. 16, 2020). It is governed by 18 U.S.C. § 3582, which was recently amended by the First Step Act of 2018. The statute contains two general requirements: (1) an exhaustion requirement, by which individual inmates must first seek relief from the Bureau of Prisons or the Warden at their institution before going to court; and (2) a substantive requirement, which contains numerous elements that I must consider prior to granting compassionate release. 18 U.S.C. § 3582. It is the movant's burden to that a sentence reduction based on compassionate release is warranted. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Greenhut*, No. 2:18-CR-00048-CAS-1, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020).

The parties agree that Newlin sufficiently exhausted his administrative remedies and I agree. Thus, the only issue is whether "extraordinary and compelling reasons" for compassionate release exist. To answer this question, I must consider the sentencing "factors set forth in section 3553(a) to the extent they are applicable" as well as any pertinent policy statements from the U.S. Sentencing Commission. *See* 18 U.S.C. §

3582(c)(1)(A)(i). The Section 3553(a) factors include (1) the nature and circumstances of the offense and history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant; and (3) the kinds of sentences and sentencing range for the applicable category of offense committed. 18 U.S.C. § 3553(a). As the Government notes, the relevant policy statement found at USSG § 1B1.13 instructs that compassionate release should only be granted if an inmate "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2).

  I will address the Section 3553(a) factors first. Newlin pleaded guilty to two child pornography-related crimes. He admitted that he extensively downloaded child pornography form the internet over the course of many years. [*See generally* DE 48, Presentence Investigative Report.] The FBI learned of Newlin by taking control of a website and then tracking users who accessed child pornography through it. At the time his home was searched and Newlin was arrested, there were approximately 1,000 still images and nearly 100 videos containing child pornography in his possession. [*Id.*] Prior to his arrest, Newlin had been unemployed for 17 years but had spent time caring for his ailing mother and sister, both of whom have passed away. It is unclear whether Newlin would be able to support himself or have others support him if he were to be released. In his Motion Newlin indicated that if he were released, a friend in the Northwest Indiana area would help him find housing. But at the telephonic hearing, his

counsel retracted that statement and stated he could not provide a proposed residence or plan for Newlin's home detention in the event he was released.

Furthermore, the crimes Newlin pleaded guilty have a 5-year mandatory minimum sentence. Pretrial Services calculated his sentencing guideline sentence range at 108-135 months imprisonment. I considered that assessment and ultimately sentenced him to 78 months, roughly three years less time than what the guidelines called for. At present, he has served approximately 19 months, or around a third of the time he is expected to serve (with good time credit). As such, I agree with the Government that reducing Newlin's sentence further at this juncture would undermine the need for both specific and general deterrence. Thus, Newlin's characteristics and the nature of his crimes weigh against an early sentence reduction, especially since he has not yet completed even half of the statutorily mandated minimum sentence.

The next issue is whether Newlin is a danger to any other person or the community. This is difficult to know. On the one hand, nothing in the record indicates Newlin is a violent person. Nonetheless, the Government argues he presents a serious risk to the community on account of the nature of his crimes. There's no doubt that Newlin's crimes were very serious and there are real victims in this case. I need not delve into the specifics of Newlin's crime or describe the contents of the materials he possessed in order to make the point. No one disputes the contents and what was depicted in the images and videos. It's true that Newlin has minimal prior criminal history and BOP records show he has a low-level risk for reoffending in large part

because he has been agreeable to treatment while incarcerated. [DE 78 at 85.] But there is still of course some risk and it is unclear if Newlin would be able to receive the same level of treatment if he were released. Nor has he provided evidence that he has a suitable residence where he could be placed under home confinement. All of which is to say that, at best, this is a very uncertain set of circumstances.

Nor do I find there to be "extraordinary and compelling reasons [that] warrant" a reduction in sentence "consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Again, the most relevant policy statement is set forth in USSG § 1B1.13. But as other courts have noted, this policy statement has not been updated since the passage of the First Step Act of 2018. *See*, *e.g.*, *United States v. Redd*, 2020 WL 1249493, at *6 (E.D. Va. Mar. 16, 2020) ("[T]here does not currently exist, for purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement.'"). But that doesn't make much difference. The Sentencing Commission's policy statement provides specific examples of what may be extraordinary and compelling circumstances, but the list is not exhaustive. It's thus reasonable to conclude that "the COVID-19 pandemic, paired with a medical condition known to exacerbate the risk of substantial injury or death, is an extraordinary and compelling factor which may be considered." *United States v. Brant*, 2:18-cr-20155-TGB-MKM, 2020 WL 2850034, at *5 (E.D. Mich. Jun. 2, 2020).

But that does not mean the COVID-19 pandemic or its proliferation in America's prisons are by themselves extraordinary and compelling circumstances. While FCI

Elkton has had a large number of COVID-19 infections, the situation appears to be improving. According to the Bureau of Prisons, there are currently only three active cases of COVID-19 amongst the inmates housed at FCI Elkton. *See* BOP, COVID-19 Cases https://www.bop.gov/coronavirus/index.jsp (accessed Aug. 24, 2020). This is a remarkable turn of events at Elkton. At one point, the situation at Elkton was perilous. Indeed, 978 inmates at the facility have recovered from COVID, and that number represents nearly half of the total population of inmates at the institution. *See* BOP, FCI Elkton https://www.bop.gov/locations/institutions/elk (accessed Aug. 24, 2020) (noting a total population of 2,130 inmates). Thus, while COVID-19 was seemingly running rampant at the facility in the early months of the pandemic, things are now more under control. Importantly, the number of deaths from COVID at FCI Elkton remains at nine. That number has been constant and not gone up in the past two months. *See Jackson*, 2020 WL 3396901, at *2 (noting nine reported deaths related to COVID-19 at FCI Elkton as of June 19, 2020). Finally, it is worth noting that Newlin has been at the facility now for the duration of the pandemic and not yet contracted the virus. As of May 2020, he tested negative. While it's unclear if he has been tested since, nothing in the medical records indicate he has contracted COVID-19 or exhibited symptoms. This is strong evidence that Newlin has been able to safely socially distance himself while incarcerated. Nothing in the record suggests he won't be able to continue to do that going forward either. And of course, even if he were released, there's a

distinct possibility Newlin could contract the virus anyway. COVID-19 remains a reality for all of us.

Newlin's specific medical conditions and the risks associated with them do not materially change the equation. The primary health concern Newlin asserts is that he had a tumor on his lung and a portion of his lung removed in March 2020. [DE 69-1 at 146.] He further states that he has not received adequate care post-operation. But his records show that he received follow-up chest x-rays multiple times since his surgery. [DE 78 at 329-332.] They were generally unremarkable. Newlin also points to records which show a mass on his liver revealed during a scan. [DE 69-1 at 207.] But the medical records indicate that the mass's stability over time "would favor benign etiology over malignancy … but malignancy cannot be entirely excluded." [*Id.*] At present there does not appear to be any indication that Newlin needs any sort of cancer treatment or surgery. While potential cancerous masses are a serious risk, the CDC has stated that "it is not known whether having a history of cancer increases your risk" of serious complications from COVID-19. Centers for Disease Control, "People at Increased Risk" https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (accessed Aug. 24, 2020).

Newlin also has some heart disease, high blood pressure, and subcutaneous emphysema. But controlled high blood pressure is generally not enough to warrant a grant of compassionate release. *United States v. Pinkley*, No. 05-cr-30104, 2020 WL 2200433, at *3 (C.D. Ill. May 6, 2020) (denying motion for compassionate release where

defendant's hypertension was well controlled). Newlin's medical records refer to unspecified "heart disease" [DE 78 at 78, 174], but there seems to be no indication that it is a serious condition. As such, Newlin's ambiguous heart conditions does little to create either extraordinary or compelling reasons to reduce his prison sentence. Concerning his emphysema, Newlin's records show "subcutaneous emphysema" which is distinct from "regular" emphysema and has not been recognized by the CDC as a condition which puts individuals at heightened risk if they contract COVID.

All of this is not to say Newlin doesn't face risks or that he doesn't have some health problems. I just don't think that, balanced against how the situation at FCI Elkton has improved, they rise to the level of extraordinary or sufficiently compelling. Combined with how the analysis of the Section 3553 factors likewise weighs against a sentence reduction, Newlin has not met his burden to show he is entitled to compassionate release. That said, I recognize a person's health is not static nor is the spread of a once-in-a-century pandemic. If there are material changes in Newlin's health or with the conditions at FCI Elkton, Newlin may file a new motion. But at this time, he is not entitled to a sentence reduction or compassionate release.

## Conclusion

For the foregoing reasons, Stacy Newlin's Motion for Compassionate Release [DE 66] is DENIED.

SO ORDERED August 26, 2020.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT